649 A.2d 651

**BOROUGH OF FLEETWOOD, Appellant,**

v.

**ZONING HEARING BOARD OF the BOROUGH OF FLEETWOOD, Appellee,**

**and**

**Turkey Hill Minit Markets, Intervenor.**

Supreme Court of Pennsylvania.

Argued April 7, 1994.

Decided Nov. 4, 1994.

Alan S. Readinger, for Borough of Fleetwood.

William C. Crosswell, for intervenor—Turkey Hill Minit Markets.

John M. Scott, for Zoning Hearing Bd.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

MONTEMURO, Justice.

Appellee, Turkey Hill Minit Markets (Turkey Hill), currently leases property at 200 West Main Street, in the Borough of Fleetwood (Borough).[1] The property is located in a C–1 General Commercial Zone pursuant to the applicable Borough Zoning Ordinance (Ordinance), and Turkey Hill presently operates a retail convenience store upon the site. On September 14, 1990, Turkey Hill applied to the Fleetwood Zoning Hearing Board (Board) for a special exception and for a variance under the Ordinance requesting permission to install a single self-service gasoline pump and canopy in the parking lot of its Fleetwood store. In addition, on October 10, 1990,

---

1. Turkey Hill is the equitable owner of the property under a twenty year lease agreement.

Turkey Hill appealed to the Board from the Fleetwood Zoning Officer's denial of a building permit for the gasoline pump.

A hearing was held on November 20, 1990. At that hearing the application for a special exception and a variance to install the gas pump was withdrawn and the appeal from the Zoning Officer's denial of the building permit was the only claim pursued by Turkey Hill. In a written decision issued by the Board on January 10, 1991,[2] the Board overturned the Zoning Officer's decision and concluded that the proposed gas pump is a "customary accessory use to the main use as a convenience store and is clearly incidental to the principal use as required by Section 403.2 of the Fleetwood Borough Ordinance." Board's Decision, Reproduced Record (R.R.) at 133a.

The Borough appealed the Board's decision to the Court of Common Pleas of Berks County. Turkey Hill duly intervened and filed a petition for bond pursuant to section 1003–a(d) of the Pennsylvania Municipalities Planning Code.[3] Act of July 31, 1968, P.L. 805, *as amended and reenacted,* Act of December 21, 1988, P.L. 1329, 53 P.S. §§ 10101–11202. The trial court took no additional evidence and by order dated September 13, 1991, the court of common pleas reversed the decision of the Board and denied Turkey Hill's application for a building permit. In response to this adverse ruling, Turkey Hill appealed to the Commonwealth Court of Pennsylvania on October 4, 1991. On November 20, 1992, the Commonwealth Court reversed the trial court's determination to the degree that it reinstated the Board's findings and conclusions, 151 Pa.Commw. 642, 616 A.2d 773 (Table). The Borough petitioned this Court for allowance of appeal which we granted on July 19, 1993, 535 Pa. 624, 629 A.2d 1384.

The Borough presents the following issues for our review:

2. Turkey Hill also filed an action in mandamus on the theory that the Board's delay in issuing its written decision resulted in deemed approval of its appeal. *See* 53 P.S. § 10908(10). A Notice of Termination due to inactivity pursuant to Pa.R.J.A. Rule 1901 was issued by the Prothonotary of Berks County on August 3, 1993.

3. The petition for bond was denied. However, the trial court did not enter a formal order to that effect and continued the matter for argument on the merits of the Borough's appeal.

I. Whether Turkey Hill must obtain a special exception and or a variance in order to operate a gasoline pump on the site of its existing convenience store?

II. Whether the operation of a gasoline pump on the site of its existing convenience store is a customary accessory use?

III. Whether the Board's conclusion of law, which provides that Turkey Hill will comply with all safety requirements including ingress and egress to its property, requires that Turkey Hill comply with section 802.10 of the Borough's Ordinance?

The first two issues raised by the Borough are in fact the same issue approached from two different directions. In its memorandum opinion, the Commonwealth Court correctly phrased this issue as: "Whether the Board erred or abused its discretion in permitting the proposed self-service gasoline island as an accessory use to the principal use of a retail convenience store." *Borough of Fleetwood v. Turkey Hill,* No. ·2143 C.D.1991 (Pa.Commw. filed Nov. 20, 1992). If the Board erred, then Turkey Hill would be required to obtain a special exception or variance before it could install the pump.

 When the trial court takes no additional evidence in zoning appeals, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or manifestly abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). An abuse of discretion occurs when the board's findings are not supported by substantial evidence in the record. *Id.* Substantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. *Id.*

The sections of the Borough's Zoning Ordinance applicable to this case are as follows:

403.1 Permitted Uses

a. Retail stores or shops or service establishments for the conduction of any retail business or service;

. . . . .

403.2 Permitted Accessory Uses—Located on the same lot with the permitted principal use

. . . . .

d. customary accessory uses and buildings, provided such are clearly incidental to the principal use.

403.3 Uses Permitted with Zoning Hearing Board Approval (Special Exception)

a. Gasoline service stations in accordance with provisions of Section 802.10;

. . . . .

Fleetwood, Pa., Zoning Ordinance No. 375 (May 29, 1973). The terms "accessory use" and "gasoline service station" are defined in Article II, Section 201.4:

*Accessory Use:* A use customarily incidental and subordinate to and located on the same lot occupied by the principal use to which it relates.

*Gasoline Service Station:* A structure or area used for the sale of gasoline or motor fuel which may include facilities for lubricating, washing, sale or accessories, and otherwise minor servicing of motor vehicles, but not including body repair or painting thereof.

*Id.*

■ The Borough argues that the installation of a gasoline pump transforms the retail convenience store into a gasoline service station and relies upon *V.S.H. Realty, Inc. v. Zoning Hearing Board of Sharon Hill,* 27 Pa.Commw. 32, 365 A.2d 670 (1976), for that assertion. In *V.S.H. Realty, Inc.* the appellant, V.S.H. Realty, applied to the Zoning Hearing Board of the Borough of Sharon Hill for a special exception to construct a convenience store and gasoline pumps on a lot located in a commercial zoning district. Retail stores, hotels, restaurants, auto repair shops, and motor vehicle service stations were permitted uses in C Commercial Districts in

Sharon Hill. *Id.* Uses of the same general character as the permitted uses were allowed by special exception. *Id.* V.S.H. Realty argued that the gasoline operation was of the same general character as a retail store and therefore, a variance was unnecessary. The Board denied the exception after a hearing on the matter because it concluded that the proposed operation was a motor vehicle service station and that the lot size did not comply with the dimensional requirements for a service station under the ordinance. The court of common pleas affirmed without taking additional evidence. The Commonwealth Court held that there was sufficient evidence to support the Board's finding that the proposed gasoline business was more similar to a service station than to a retail store; therefore, the court affirmed the trial court. *Id.* *V.S.H. Realty* is not analogous to the instant case. Unlike Turkey Hill, V.S.H. Realty failed to assert that the sale of gasoline was a use accessory to a retail convenience store. Hence, the Commonwealth Court's opinion in *V.S.H. Realty* lacks any accessory use analysis which would be relevant in this matter.

The Borough also relies upon two decisions from outside our jurisdiction for the proposition that the sale of gasoline converts a convenience store into a gasoline service station. First, the Borough cites *Singal v. Bangor,* 440 A.2d 1048 (Me.1982). In *Singal* the Maine Supreme Judicial Court held that gasoline pumps and underground storage tanks were not a use accessory to a "grocery superette" in an area zoned as neighborhood commercial. The court found that gasoline pumps were structures, and that the applicable accessory use provision in the ordinance did not provide for structures incidental to retail stores. *Id.* Additionally, the court reviewed the ordinance as a whole and determined that because the ordinance considered the sale of gasoline undesirable even in heavy commercial zones, the legislative intent of the ordinance was to prohibit the sale of gasoline in neighborhood commercial zones. *Id.* Consequently, the legislature could not have intended a gasoline service station as an accessory use to a "grocery superette."

Unlike the Bangor zoning ordinance, which restricts gasoline sales to heavy commercial zones, the Fleetwood Ordinance allows gasoline sales in the C–1 General Commercial Zone by special exception. Moreover, Fleetwood's Ordinance defines "accessory use" as including accessory structures. Hence, factual distinctions exist between the Fleetwood Ordinance and the Bangor Zoning Ordinance which render the Maine court's reasoning unpersuasive in the case *sub judice*.

Second, the Borough relies upon *Genesee Farms, Inc. v. Scopano*, 77 A.D.2d 784, 431 N.Y.S.2d 219 (4th Dep't 1980). In *Genesee Farms* the Zoning Board of the Village of Oakfield appealed from a judgment directing it to grant a building permit for the construction of a self-service gasoline island to be operated on Genesee Farms' premises in conjunction with its ongoing dairy store operation. The Supreme Court of New York, Appellate Division, held that upon examination of the village zoning ordinance's definitions of "service station" and "accessory use," Genesee Farms' proposed construction constituted a service station.[4] Moreover, the construction could not be considered an accessory use because the sale of gasoline is inherently different for the sale of other products and is "wholly unrelated to the sale of dairy goods." *Id.* at 784, 431 N.Y.S.2d at 219. Judge Callahan, however, dissented and wrote:

We cannot view this record blindly to see the petitioner's store as a gas station operation simply because gasoline is dispensed and ignore the modern trend in merchandising other consumer products. We must take judicial notice of the recent "stop and go" type stores which have self-service

---

**4.** The village zoning ordinance defines "service station" and "accessory use" as follows: service station [gas station]: Any area of land including structures thereon, or any building or part thereof that is used for the sale of motor fuels or motor vehicle accessories and which may include facilities for lubrication, washing, or otherwise servicing motor vehicles, but not including body work, major repair, or painting thereof by any means. Accessory use: A use customarily incidental and subordinate to the principal use of building or land and located on the same lot with such principal use of building or land.
*Genesee Farms,* 77 A.D.2d at 784, 431 N.Y.S.2d at 220.

gas pumps incidental to selected convenient items, principally dairy products.

*Id.* at 786, 431 N.Y.S.2d at 221 (Callahan, J. dissenting).

While the facts of *Genesee Farms* are comparable to the facts in the instant action, the reasoning employed by the majority in the New York court has been examined and rejected by our Commonwealth Court in *Food Bag, Inc. v. Mahoning Township*, 51 Pa.Commw. 304, 414 A.2d 421 (1980).

In *Food Bag*, appellant, Food Bag, operated a "convenient market" on its property located in a commercial apartment zone in Mahoning Township. Appellant sought to obtain permission to install gasoline pumps as either a use of the same general character as a retail food store, or as an accessory use. The Zoning Hearing Board rejected both theories and denied appellant's application. The court of common pleas affirmed. The Commonwealth Court held that the Board correctly determined that the sale of gasoline from self-service pumps was not of the same general character as the sale of items in a convenient market. *Id.*

Nevertheless, the Commonwealth Court remanded the matter to the Board because it decided that the findings of the Board were insufficient to justify a determination that the sale of gasoline was not an accessory use. The court found that because the Board had failed to make "findings on (1) whether convenient markets are an independent industry, and if they are, (2) whether the self-service gasoline pumps would be secondary to a convenient food market, and (3) whether self-service gasoline pumps are usually found with convenient food markets." *Food Bag*, at 309, 414 A.2d at 424 (citing *Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556 (1975)). The court in *Food Bag* acknowledged that uses could be principal or accessory depending upon the individual circumstances. *See Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 227 A.2d 824 (1967). Moreover, the court found irrelevant the board's finding that the purchase of gasoline was not incidental to purchasing a loaf of bread, if gasoline pumps were secondary to and usually found with convenience

food markets. *Food Bag,* 51 Pa.Commw. at 309, 414 A.2d at 423.

In the case at bar the Board made the following pertinent findings of fact:

9. Section 403.2 of the Fleetwood Zoning Ordinance Permits Accessory Uses in General commercial areas on the same lot with the permitted principal use as long as the accessory use is customary and is clearly incidental to the principal use.

. . . . .

11. The use to which the majority of the area of the property will continue to be devoted is the sale of retail products. Sale of gasoline is commonly associated with convenience stores and 146 of Turkey Hill's 203 convenience stores sell gasoline as an accessory use.

12. The estimated number of patrons who purchase items other than gasoline far exceeds the customers who purchase only gasoline This was backed up by many surveys conducted by Turkey Hill personnel.

13. The word incidental as it relates to accessory use means that the use must be one which is subordinate and minor in significance.

14. Convenience stores are a recognized independent industry. According to *Convenience Store News 1990 Industry Report,* the industry included approximately 83,000 stores. Of the 83,000 stores, 65,000 or 78% had gasoline pumps.

Clearly with *Food Bag* in mind, the Board found that convenience markets are an independent industry (Findings of Fact 14), that the sale of gasoline would be secondary to the use as a convenience market (Findings of Fact 11 and 12), and that self-service gasoline pumps are usually found with convenience food markets (Findings of Fact 11 and 14). Upon review of the record, it is evident that these findings are supported by the uncontradicted testimony presented by Turkey Hill.

Accordingly, we find that the Board did not abuse its discretion when it held that the proposed self-service gasoline

island was an accessory use to the principal use as a retail convenience market.

The second issue raised by the Borough is whether Turkey Hill must comply with Section 802.10 of the Ordinance which enumerates the conditions upon which a special exception for a service station may be granted. Section 802.10 reads:

*Gasoline Service Stations* Gasoline service stations are permitted by special exception in the Commercial Service District subject to the following conditions:

1. Plans are required to be presented detailing traffic flow within the station, points of ingress and egress, and probable effects on local traffic flow. Ingress and egress points shall not be located closer than one hundred (100) feet of any intersection.

2. Service stations operation shall be limited to sales and minor repairs.

3. All vehicle and parts storage, shall be so designed and located as not to intrude into any required yard. Yard areas adjacent to residential districts shall be suitably screened.

4. Main or accessory buildings shall not be located closer than fifty (50) feet to any residential district.

5. All lighting provided shall not produce glare visible to adjoining residences.

Fleetwood, Pa., Zoning Ordinance No. 375 (May 29, 1973).

The Borough argues that Turkey Hill must comply with section 802.10 because the Board wrote in conclusion number 4 that: "Turkey Hill Minit Markets is to comply with all safety requirements including ingress and egress to its property after installation of said gas pumps." Board's Decision, R.R. pg. 133a. The trial court held that Section 802.10 would have applied, had it found the gasoline pump to be an accessory use. The Commonwealth Court reversed the trial court and found that Section 802.10 by its terms applies only to uses permitted by special exception and not to accessory uses; accordingly, Turkey Hill's gasoline pump could not be restrict-

ed by the section. *Borough of Fleetwood v. Turkey Hill,* No. 2143 C.D.1991 (Pa.Commw. filed Nov. 20, 1992). Moreover, the Commonwealth Court also found Section 802.10 inapplicable because the Ordinance does not place any restrictions upon accessory uses in either the definition of accessory use or in Section 403.2(d). *Id.*

We need not struggle over the proper construction of the Fleetwood Zoning Ordinance. A correct reading of the Board's conclusions reveals that the Board was referring to the ingress and egress provisions stated in Turkey Hill's plan for the building permit and not Section 802.10. The Board arrived at the following conclusions:

2. The installation and operation of self-service gas pumps on the northeast corner of 200 W. Main Street in accordance with the plans submitted by Turkey Hill Minit Markets, the owner, is a customary accessory use to the main use as a convenience store and is clearly incidental to the principal use as required by Section 403.2 of the Fleetwood Borough Zoning Ordinance.

. . . . .

4. Turkey Hill Minit Markets is to comply with all safety requirements including ingress and egress to its property after installation of said gas pumps.

5. Turkey Hill Minit Markets shall comply with its drawings and specifications for the installation of the gas pumps and gas tanks submitted to the Zoning Hearing Board.

Board's Decision, R.R. pg. 133a–134a. To read conclusion number 4 as requiring Turkey Hill to comply with Section 802.10 would render conclusions 2 and 5 meaningless. Following the plan, as mandated by conclusions 2 and 5, precludes compliance with Section 802.10 because they directly conflict. The Board could not have intended this absurd result. The Board was concerned that Turkey Hill comply with the plan it submitted to the Board—including the ingress and egress provisions delineated in the plan. Had the Board wished Turkey Hill to comply with Section 802.10 it would have

referred to that Section specifically, as it referred to Section 403.2 in conclusion 2.

Furthermore, it was not an error of law nor an abuse of discretion for the Board to fail to apply Section 802.10. We do not arrive at this decision unmindful of the legislative intent to regulate the sale of gasoline as indicated by the Ordinance or that the Borough did not anticipate, in 1973 when it adopted the Zoning Ordinance, that the sale of gasoline would one day be an accessory use to a retail convenience store.

Yet, when construing the terms of a local zoning ordinance, we are guided by the principles of statutory construction set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. *See Patricca v. Zoning Board of Adjustment,* 527 Pa. 267, 590 A.2d 744 (1991) (citing *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987)). While the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit. *See Tobin v. Radnor Tp. Bd. of Com'rs,* 142 Pa.Commw. 567, 597 A.2d 1258 (1991). In this case the letter of the ordinance states that accessory uses are permitted as of right, and is devoid of any additional restrictions or requirements upon them. Moreover, Section 802.10 only applies to a use permitted by special exception. Furthermore, any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Id.* Accordingly, the Board was correct when it did not apply Section 802.10 to Turkey Hill's proposed self-service gasoline pump.

Therefore, we affirm the decision of the Commonwealth Court reinstating the Board's Findings and Conclusions.

MONTEMURO, J., is sitting by designation.