ATLANTIC REFINING & MARKETING
COMPANY (Richard W. Von Luehrte,
Agent), Appellant,

v.

WHITPAIN TOWNSHIP ZONING
HEARING BOARD and
Whitpain Township.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1995.
Decided March 22, 1995.
Reargument Denied May 8, 1995.

Herbert F. Rubenstein, for appellant.

Blake E. Dunbar, Jr., for appellees.

Before McGINLEY and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

NEWMAN, Judge.

Atlantic Refining & Marketing Company (Richard W. Von Luehrte, Agent), (Atlantic) appeals an order of the Court of Common Pleas of Montgomery County (trial court) that affirmed a decision of the Whitpain Township Zoning Hearing Board (Board) denying its request to add a convenience store to an existing gasoline station. We affirm.

Atlantic operates a gasoline station at the intersection of Skippack and Butler Pikes in Whitpain Township. The subject property is located in a district designated C Commercial pursuant to the Whitpain Township Zoning Ordinance of 1950 (Zoning Ordinance). A gasoline station, which also sells snack foods and automotive supplies, has operated on the premises since 1954. Until 1988, the property also served as an automotive service and repair shop. The lot contains 25,670 square feet and is improved with a one-story service station building and two islands each containing three gasoline pumps. Atlantic proposed to replace the building with a 2,400 square foot convenience store and to replace the pumps with four new ones covered by a canopy.

In September 1990, Atlantic appealed a decision of the zoning officer of Whitpain Township for an interpretation of the Zoning Ordinance, and sought special exceptions and/or variances: (1) to permit two uses on one lot (a convenience store and a self-service gasoline facility); (2) to allow two 18 square foot illuminated signs to be affixed to the building; and (3) to allow a proposed 40 foot by 60 foot A–Plus Mini–Market to encroach 11 feet into a required 30 foot rear yard.

The Board held public hearings on the application on July 25, 1991, October 13, 1991 and November 21, 1991. On January 17, 1992, the Board issued a decision denying the request for an interpretation of the Zoning

Ordinance, as well as the special exceptions and variances. Atlantic appealed the decision to the trial court, which heard oral argument on June 25, 1993. On September 22, 1993, the trial court affirmed the decision of the Board. This appeal followed.

On appeal, Atlantic raises the following issues: (1) whether its proposed convenience store qualifies as an accessory use to the primary use of a gasoline filling station; (2) whether an accessory use is permitted as of right where the principal use is one permitted by special exception; (3) whether the Zoning Ordinance's allowance of the use of a lot for "retail establishments" contemplates more than one establishment on the same lot; (4) whether a gas station/convenience store use is of the same general character as "retail establishments" under Sections 160–112.E and 160–112.L. of the Zoning Ordinance; (5) whether Atlantic is entitled to a variance to expand its operation in response to the true dictates of business; and (6) whether Atlantic established the existence of a nonconforming dual use of the premises which it must now be permitted to expand.[1]

Section 160–112 of the Zoning Ordinance sets forth the use regulations applicable to C Commercial Districts. Subsections A–P establish uses permitted without a special exception, while Subsection P sets forth uses that require a special exception. Section 160–112 states in relevant part:

A building may be erected, altered or used and a lot or premises may be used or occupied for any one (1) of the following purposes and no other:

A. Any use permitted in the least-restricted residential district abutting the particular C Commercial District in question. . . .

B. Fraternity house, lodge, rooming house, tourist home.

C. Day camp. . . .

D. Business or professional office. . . .

E. Retail establishments for the sale of dry goods, variety and general merchan-

---

1. Our scope of review in a zoning appeal, where the trial court took no additional evidence, is limited to determining whether the Board committed an error of law or an abuse of discretion or made findings not supported by substantial evidence. *Haaf v. Zoning Hearing Board of Township of Weisenberg,* 155 Pa.Commonwealth Ct. 608, 625 A.2d 1292 (1993).

dise, clothing, food, drugs, furnishings or other household supplies....

F. Restaurant, tearoom....

G. Bakery, confectionery or custom shop for the production of articles to be sold at retail on the premises....

H. Greenhouse, florist shop.

I. Personal service shop, including tailor, barber, beauty salon, shoe repair, dressmaking or similar shop.

J. Indoor theater, bowling alley, billiard room or other place of indoor amusement or recreation....

K. Newspaper publishing, job printing.

L. Any use of the same general character as any use hereinbefore specifically permitted by special exception.

M. Signs....

N. Noncommercial recreational use.

O. Club, which is defined to mean a voluntary, nonprofit incorporated or unincorporated association for the purpose of social or literary activities.

P. Accessory use on the same lot with and customarily incidental to any of the foregoing permitted uses.

Q. The following uses when authorized by special exception:

(1) Automobile or farm machinery sales and service agency with enclosed showrooms, including used car lot and repair shop adjacent thereto and in connection therewith.

(2) Gasoline filling stations, storage or public garage, automobile repair shop, but excluding the storage of junked automobiles, trucks or parts thereof.

(3) Hotel, automobile court (motel), provided that satisfactory public sewerage facilities are available.

(4) Hand or automatic self-service laundry, provided that satisfactory public sewers are available.

(5) Municipal or private parking lot serving two (2) or more commercial establishments within the district.

(6) Funeral parlor.

## I.

Section 160–5 of the Zoning Ordinance defines "accessory use" as "a use subordinate to the principal use of land or a building or other structure on a lot and customarily incidental thereto." [2]

Atlantic argues that a convenience store is an accessory use customarily incidental to a gasoline service station, and is therefore a permitted use pursuant to Section 160–112.P. With regard to this issue, Atlantic presented to the Board the testimony of the following four witnesses: Vincent DeLaurentis, an Atlantic Employee in charge of all A–Plus Mini–Markets in the Philadelphia division; Joseph Barks, editor of the trade publication *Convenience Store Decisions;* Ronald Regar, vice president of The Dillon Companies, which trades as Turkey Hill Minit Markets; and Walter C. Evans, a professional land planner. The Township presented the testimony of Gary Leone, a real estate representative employed by Wawa Food Markets.

Based on the testimony of these witnesses, the Board made the following relevant findings of fact:

10. For several years, in certain parts of the country, for economic and profit reasons, there has been an evolutionary trend for gasoline service station companies to add convenience stores and for convenience store companies to add self-service gasoline operations, one as an accessory use to, or a joint use with, the other.

11. Although the evidence indicates that, currently, a majority of convenience store companies appear to be combining these

---

**2.** As the trial court noted, this definition is similar to the standard set forth in *Food Bag v. Mahoning Township Zoning Board,* 51 Pa.Commonwealth Ct. 304, 414 A.2d 421 (1980). In that case, an applicant sought to install self-service gasoline pumps as an accessory use to a convenience store. This court remanded the matter to the zoning board to make "findings on (1) whether convenient markets are an independent industry, and if they are, (2) whether the self-service gasoline pumps would be secondary to a convenient food market, and (3) whether self-service gasoline pumps are usually found with convenient food markets." *Id.* at 309, 414 A.2d at 424. The court in *Food Bag* noted that a use can be principal or accessory, depending on the circumstances.

operations, there was no evidence as to how many or few service stations remain in operation without convenience store sales.

Board's Findings of Fact and Conclusions of Law at 45.

The Board also made the following relevant conclusion of law:

12. Notwithstanding what appears to be an evolutionary trend toward combining gasoline facilities and convenience stores in other areas of the country, *the test of whether these constitute a single use or two must be measured by the character of the area in which the combined use is proposed.* The success of WaWa without gasoline sales, and the significantly lower percentage of combined uses, *in both Whitpain Township and the Delaware Valley area* not only fail to establish the significant development of this evolutionary trend in southeastern Pennsylvania, but reflect substantial continuation of automotive service stations and convenience stores as *separate successful principal uses in the subject area.*

Board's Findings of Fact and Conclusions of Law at 49 (emphasis added).

On appeal, Atlantic argues that the Board erred in determining that the issue of whether a convenience store is customarily incidental to a gasoline station must be based on conditions in the area where the proposed accessory use is to be located. In support of its position, Atlantic cites the Pennsylvania Supreme Court's recent decision in *Borough of Fleetwood v. Zoning Hearing Board of the Borough of Fleetwood,* 538 Pa. 536, 649 A.2d 651 (1994), the facts of which are as follows.

Turkey Hill Minit Markets (Turkey Hill), the operator of a convenience store in a C–1 General Commercial Zone in the Borough of Fleetwood, appealed to the Zoning Hearing Board (Fleetwood Board) from a zoning officer's denial of a building permit for a self-service gasoline pump and canopy. In a written decision, the Fleetwood Board overturned the zoning officer's decision because it concluded that the proposed gasoline pump was a customary accessory use to the principal use as a convenience store. The Borough appealed the decision to the Court of Com-

mon Pleas of Berks County which reversed the decision of the Fleetwood Board. On appeal, this court reversed the trial court and reinstated the Fleetwood Board's findings of fact and conclusions of law.

On appeal to the Pennsylvania Supreme Court, the issue was whether the Board erred or abused its discretion in permitting the proposed self-service gasoline island as an accessory use to the principal use of a retail convenience store. The Fleetwood Board made the following relevant findings of fact, which were supported by uncontradicted testimony presented by Turkey Hill:

11. Sale of gasoline is commonly associated with convenience stores, and 146 of Turkey Hill's 203 convenience stores sell gasoline as an accessory use.

12. The estimated number of patrons who purchase items other than gasoline far exceeds the customers who purchase only gasoline.

. . . . .

14. Convenience stores are a recognized independent industry. According to *Convenience Store News 1990 Industry Report,* the industry included approximately 83,000 stores. Of the 83,000 stores, 65,000 or 78% had gasoline pumps.

*Borough of Fleetwood* at ——, 649 A.2d at 655.

Based on the findings of fact, the Supreme Court found that the Board did not abuse its discretion when it held that the proposed self-service island was an accessory use to the retail convenience market.

■ In the instant case, Atlantic argues that *Borough of Fleetwood* establishes as a matter of law that convenience stores and gasoline stations are customarily found with each other. We reject this position, because the holding in *Borough of Fleetwood* is more narrow, and is limited to a determination that the Fleetwood Board did not abuse its discretion under the specific facts of that case. For this reason, *Borough of Fleetwood* does not stand for the proposition that all convenience stores are permitted a gasoline station as an accessory use, and vice versa.

■ In the instant matter, Vincent De-Laurentis testified that of a total of 600 Atlantic gasoline stations in New York and Pennsylvania, only 260, or forty-three percent, have an A–Plus franchise food store on the premises. (Notes of Testimony, 7–25–92, at 64–65). Joseph Barks testified that although the *Convenience Store News 1990 Industry Report* indicated that approximately sixty percent of gasoline stations nationwide also have a convenience store on the premises, he was unable to provide statistics for the Delaware Valley (Notes of Testimony, 7–25–92 at 101, 102, 111). Walter C. Evans testified that he conducted a survey in Whitpain Township and surrounding municipalities. He found that approximately twenty percent of the gasoline stations in the area had convenience stores on the premises. (Notes of Testimony, 10–31–91 at 52–54, 73–75). Based on this testimony, we conclude that the Board did not err in finding that convenience stores are not customarily an incidental use to gasoline stations.

## II.

Atlantic next raises the issue of whether an accessory use is permitted by right where the principal use is one permitted by special exception. In light of our determination that Atlantic's proposed convenience store does not constitute an accessory use to a gasoline station (a use permitted by special exception), we need not reach this question.

## III.

■ Atlantic also argues that it is entitled to build its gas station and convenience store on one lot based on Section 160–112.E of the Zoning Ordinance, which allows for:

Retail establishments for the sale of dry goods and general merchandise, clothing, food, drugs, furnishings or other household supplies, sale and repair of jewelry, watches, clocks, optical goods or musical, professional or scientific instruments; however, not including the retail sale, storage or wholesaling of lumber, plumbing and other building materials and supplies.

Atlantic suggests that the use of the term "retail establishments" contemplates more than one retail establishment on the same lot. However, this argument ignores the fact that the introductory paragraph of Section 160–112 provides that in C Commercial Districts, "a building may be erected, altered or used and a lot or premises may be used or occupied for any *one (1)* of the following purposes and *no other.*" (Emphasis added). We agree with the Borough that the use of the plural expression "retail establishments" refers to the permitted uses enumerated in Section 160–112.E and does not provide for the operation of two or more of such permitted uses on one lot. Accordingly, the Board did not err in concluding that Section 160–112 limits a lot in the C Commercial District to one use.

## IV.

■ Section 160–112.E allows retail establishments in the C Commercial District, and Section 160–112.L permits "any use of the same general character as any use hereinbefore specifically permitted by special exception." With regard to this issue, the Board made the following pertinent conclusions of law:

14. An automotive service station is not a use of the same general character as the retail establishment described in Section 160–112.E or as any other use hereinbefore specifically permitted by special exception. *Food Bag, Inc. v. Mahoning Township Zoning Board,* 51 Pa.Commonwealth Ct. 304, 414 A.2d 421 (1980); *VSH Realty, Inc. v. Zoning Hearing Board of Sharon Hill,* 27 Pa.Commonwealth Ct. 32, 365 A.2d 670 (1976); *Appeal of Atlantic Richfield Co.,* 77 Pa.Commonwealth Ct. 310, 465 A.2d 1077 (1983); *Gustin v. Zoning Hearing Board of Sayre Borough,* 55 Pa.Commonwealth Ct. 410, [423] 432 A.2d 1085 (1990 [1980]).

15. Since gasoline filling stations are separately permitted by special exception under Section 160–112.Q.(2), they are obviously intended to be distinguished from retail establishments permitted by right under Section 160–112.E. Therefore, the combination of a gasoline facility and a convenience store cannot be jointly of the same general

character as a retail establishment under Section 160–112.E.

Board's Findings of Fact and Conclusions of Law at 50.

Based on our review of the record, we believe there is substantial evidence to support the Board's conclusion that the sale of gasoline is not of the same general character as the retail sale of items enumerated in Section 160–112.E. Furthermore, Section 160–112.L specifically refers to "any use of the same general character as hereinbefore specifically permitted by special exception." Because Section 160–112.Q(2) clearly sets gasoline stations apart from "uses hereinbefore specifically permitted," Section 160–112.L cannot be read to provide Atlantic the relief it seeks.

## V.

Atlantic also sought a variance to add a convenience store to its gasoline station on the basis that the dual use was in response to the dictates of business. In support of its argument, Atlantic cites *Amoco Oil Co. v. Ross Township Zoning Hearing Board*, 57 Pa.Commonwealth Ct. 376, 426 A.2d 728 (1981) in which a gasoline station owner sought to modify an existing nonconforming gasoline station from full service to self-service. The zoning board denied the request, as did a land use referee who was appointed by the Court of Common Pleas to take additional evidence. On appeal, this court found that Amoco, "demonstrated a real need to keep pace with competition, which, the American Petroleum Institute estimates, 'self-serves' approximately 39% of all the 1978 retail gasoline in the United States." *Id.* at 381, 426 A.2d at 731.

Atlantic argues that because the *Amoco* court relied on the nationwide percentage of self-service gasoline stations, without discussing the number of local self-service gasoline stations, the trial court erred when it reached the following conclusion:

Applicant did not show that the proposed renovation was essential to its survival.

The evidence revealed that only eleven gasoline stations in the surrounding area incorporate the dual use, while forty-one remain single-use gas stations.

Trial Court Opinion at 17.

■ We agree with the trial court that where testimony is presented regarding business conditions in the local area, such evidence is relevant to the issue of competition and its effect on the dictates of business.

■ In the instant case, the Board found that a variance to permit reasonable expansion to accommodate business interests was not applicable because Atlantic voluntarily restricted its revenue when it terminated automotive repairs and service in 1988. In light of this fact, and the continued operation of gasoline stations without convenience stores in Whitpain Township, we conclude that the Board did not err in denying the requested variance.

## VI.

Atlantic also argues that because snack foods and automotive supplies have been sold on the property since 1954, it has established the existence of a nonconforming use of a retail establishment as provided in Section 160–112.E.[3] Accordingly, Atlantic seeks to expand this nonconforming use by building a convenience store.

The Board found that "a convenience store can be defined as a retail store, varying from about 1,800 to 3,000 square feet...." (Board's Findings of Fact and Conclusions of Law at 45). This is in marked contrast to a smaller 800 to 900 square foot facility such as Mobil Mart which sells a limited number of products on the same premises where gasoline is dispensed. Atlantic's witness, Andreas Heinrich, testified to differences between the two types of operations, including the fact that a convenience store sells more food items, and consequently generates more traffic at the lunch hour than a smaller facility. Notes of Testimony, 11–14–91, at 43–46.

3. Our review of the record indicates that the trial court properly determined that Atlantic failed to sustain its burden of proof regarding this issue.

The existing service station building measures twenty feet by sixty feet, out of which an area measuring twenty feet by thirty feet is used for retail sales. Section 160–208 provides that a nonconforming use may be expanded, "so long as that expansion shall not exceed either twenty-five percent (25%) of the gross square footage of floor area of the principal building or structure ... provided, however, that such expansion shall comply with all other applicable provisions of this chapter and shall not otherwise be detrimental to the health, safety, morals or general welfare of the community where situated." Atlantic's proposal to build a convenience store that measures forty feet by sixty feet, or 2,400 square feet, clearly violates Section 160–208. Accordingly, we hold that the Board did not err in refusing to grant the relief that Atlantic sought.

For these reasons, we affirm the order of the trial court.

### ORDER

AND NOW, March 22, 1995, we affirm the order of the Court of Common Pleas of Montgomery County.