

# IN THE
# Court of Appeals of Indiana

Shawn Senter,

*Appellant-Petitioner*

v.

Kosciusko County Board of Zoning Appeals,

*Appellee-Respondent*



FILED

Jan 21 2025, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

January 21, 2025

Court of Appeals Case No.
24A-MI-1863

Appeal from the Kosciusko Superior Court

The Honorable Karin A. McGrath, Judge

Trial Court Cause No.
43D01-2310-MI-78

---

**Opinion by Judge Tavitas**
Judges May and DeBoer concur.

**Tavitas, Judge.**

## Case Summary

Shawn Senter appeals the trial court's denial of his petition for judicial review of the decision of the Kosciusko County Board of Zoning Appeals ("the BZA"), which denied Senter's request to conduct retail sales of gasoline on his property. Senter presents several issues for our review, one of which we find dispositive: whether Senter required the BZA's approval to conduct retail gasoline sales on his property. Because the zoning ordinance explicitly allows a retail business to be operated on Senter's property and the ordinance's exceptions are inapplicable, the BZA's decision restricting Senter's retail sale of gasoline on his property was improper. Accordingly, we reverse the trial court's decision and remand with instructions to grant Senter's petition for judicial review.

## Issue

We address one dispositive issue: whether Senter required the BZA's approval to conduct retail gasoline sales on his property.

## Facts

Senter owns two parcels of real estate in Cromwell, Indiana ("the Property"). The Property is zoned for commercial use and abuts a water channel that connects to Lake Wawasee. In 2018, the BZA granted Senter a temporary special exception to allow Senter to operate a marina on the Property. This

temporary exception required Senter to comply with certain obligations[1] and to re-petition for the special exception the following year. Due to delays in the development of the Property, however, Senter did not re-petition for the special exception in 2019.[2] At some point that is not entirely clear from the record, Senter placed an above-ground gasoline tank on the Property. This tank was only five feet from the property line, which violated the set-back requirement of ten feet established by the local zoning ordinance.

[4] On July 12, 2023, Senter filed a petition for a special exception to allow him to operate a marina and sell gasoline to boaters on the Property.[3] The BZA held two public hearings on these matters. The first of these hearings was held on August 8, 2023. Several people from a local homeowners association attended the hearing and raised concerns about Senter's plans. The BZA continued the matter to a hearing held on September 12, 2023.

[5] After the first hearing, Senter emailed Matthew Sandy, the Director of the Kosciusko County Area Plan Commission, and provided Sandy with information regarding: safety features on the gasoline tank; a planned two-person fill-up policy; planned installation of signage with instructions for the

---

[1] These obligations required Senter to develop the Property consistent with the site plan.

[2] Senter claimed that the prior owner of the Property had used the area as a junk yard and that delays in the cleanup of the Property delayed the development of the Property to use as a marina. Senter claimed that, due to these delays, the Property was not ready for use as a marina in 2019, so he did not re-petition for the special exception.

[3] On this same date, Senter also requested a variance for the tank's violation of the set-back requirements.

safe use of the marina; security surveillance and lighting; screening around the tank; and plans to install a spill-cleanup kit.

[6] By the time of the second hearing, several members of the homeowners association submitted objections to Senter's petition, and over 140 members of the homeowners association signed a petition objecting to the marina and sale of gasoline. The homeowners' concerns included the risk of fire or explosion, the smell of gasoline fumes, the attraction of additional boaters, and the spilling of gasoline. Senter presented evidence that he planned to enclose the tank, that the tank had an emergency shut-off system, and that he planned to address security concerns by installing lighting.

[7] At the conclusion of the hearing, the BZA unanimously agreed to approve the special exception to allow the use of the marina but with the conditions that no fuel sales were allowed on the Property and that the existing gasoline tank and accessories be removed from the Property.[4] On October 12, 2023, Senter filed a petition for judicial review of the BZA's decision. The trial court accepted briefs from both parties and, on July 9, 2024, denied Senter's petition. Senter now appeals.

---

[4] The BZA also denied Senter's petition for a variance for the set-back requirements of the gasoline tank. Senter does not challenge the BZA's denial of this request for a variance.

# Discussion and Decision

[8] On appeal, Senter argues that the BZA erred by prohibiting him from selling gasoline on the Property.

## I. Judicial Review of BZA Decisions

[9] Indiana Code Section 36-7-4-1614(d) provides for judicial review of decisions of a board of zoning appeals and states that a reviewing court:

> shall grant relief . . . only if the court determines that a person seeking judicial relief has been prejudiced by a zoning decision that is:
>
> > (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > (2) contrary to constitutional right, power, privilege, or immunity;
> >
> > (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (4) without observance of procedure required by law; or
> >
> > (5) unsupported by substantial evidence.

[10] Accordingly, both the trial court and the court on appeal "review the decision of a zoning board with the same standard of review." *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty.*, 873 N.E.2d 598, 600 (Ind. 2007) (citing *Crooked Creek Conservation & Gun Club, Inc. v. Hamilton Cnty. N. Bd. of Zoning Appeals*, 677 N.E.2d 544, 547 (Ind. Ct. App. 1997), *trans. denied*.). The proceeding before the trial court in a petition for judicial review is not a trial *de*

*novo*, and neither the trial court nor the court on appeal "may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency." *Id*. Instead, "[t]he appropriate standard of review, 'whether at the trial or appellate level, is limited to determining whether the zoning board's decision was based upon substantial evidence.'" *Id.* (quoting *Crooked Creek Conservation*, 677 N.E.2d at 547).

[11]    We have also noted that:

> [w]hen an aggrieved party seeks relief in court from an adverse administrative determination and attacks the evidentiary support for the agency's findings, he bears the burden of demonstrating that the agency's conclusions are clearly erroneous. That standard requires great deference toward the administrative board when the petition challenges findings of fact or the application of the law to the facts. *But if the allegation is that the [board] committed an error of law, no such deference is afforded and reversal is appropriate if an error of law is demonstrated. . . .* There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. A decision is arbitrary, capricious, or an abuse of discretion if it is not supported by substantial evidence.

*House of Prayer Ministries, Inc. v. Rush Cnty. Bd. of Zoning Appeals*, 91 N.E.3d 1053, 1058 (Ind. Ct. App. 2018) (emphasis added) (internal citations and quotations omitted), *trans. denied*.[5]

## II. Senter did not require the BZA's permission to conduct retail gasoline sales on the Property.

[12] Senter claims that, although he required the BZA's permission to operate a marina on the Property, he did not require the BZA's permission to conduct retail gasoline sales. We agree.

[13] The Property at issue is zoned as a commercial district. Section 2.9 of the Kosciusko County Zoning Ordinance ("the Zoning Ordinance")—provides:

> 2.9 **Commercial District:** The commercial district is primarily for retail or service uses.
>
>> 2.9.1 Open storage shall be permitted in commercial districts if it occupies not more than twenty (20) percent of the gross lot area and is screened. Half of this area may be unscreened if utilized for display area for saleable goods. No portion of said display or storage area shall interfere with the required parking areas as presented in section 3.16 of this ordinance.

---

[5] Appeals from decisions of a board of zoning appeals are not subject to judicial review under the Administrative Orders and Procedures Act ("AOPA"); instead, there is a specific statute that authorizes judicial review of zoning decisions—Indiana Code Section 36-7-4-1614, cited above. Accordingly, the 2024 amendments to the AOPA have no bearing on our decision in the present case. *See Brookstone Res., Inc. v. Dep't of Nat. Res.*, 243 N.E.3d 1127, 1138 (Ind. Ct. App. 2024) (discussing the 2024 amendments to the AOPA).

2.9.2 All sites must comply with the Kosciusko County Stormwater and Erosion Control Ordinance.

Appellant's App. Vol. III p. 45.

[14] The Zoning Ordinance sets forth the types of uses that are "[p]ermitted [u]ses" for each zoning district without prior approval of the BZA. *Id.* at 54; *see also* 83 AM. JUR. 2D *Zoning & Planning* § 129 ("The term 'permitted use' generally refers to those uses allowed absolutely and unconditionally. 'Permitted uses' provided for by zoning ordinances are those allowed as of right provided the landowner meets all other requirements, such as building code requirements.") (footnote omitted). The Zoning Ordinance also sets forth the types of uses that are "[e]xceptional [u]ses," which do require the prior approval of the BZA. *Id.* at 54; *see also* 83 AM. JUR. 2D *Zoning & Planning* § 129 ("'Conditional uses,' also known as special exceptions, provided for by zoning ordinances are allowed in the zoning code, but they are uses that may have a significant impact and thus require an administrative hearing for approval.") (footnote omitted).

[15] For areas zoned as commercial districts, the Zoning Ordinance lists "Retail Business" as one of eighteen permitted uses that do not require pre-approval by the BZA. *Id.* at 54. The Zoning Ordinance lists "Marina" and "Motorized Vehicle Sales, Service, & Repair" among the thirty-one exceptional uses requiring prior BZA approval. *Id.* at 54-55. The parties agree that the use of the Property as a marina required the approval of the BZA. And the BZA granted Senter's request for a special exception to use the property as a marina. Senter argues, however, that he did not need the BZA's permission to sell

gasoline on the Property because gasoline sales fall under the term "retail business," which is a permitted use of the Property.

[16] The BZA acknowledges that retail businesses are listed as a permitted use for commercially-zoned properties but claims that gasoline sales fall within the meaning of "motorized vehicle sales, service, & repair"—which is listed as an exceptional use of commercially-zoned property that requires the approval of the BZA. The BZA also notes that the Zoning Ordinance defines a "motorized vehicle" to include "watercraft." Zoning Ordinance § 9; Appellant's App. Vol. III p. 131. Thus, the BZA argues that the sale of gasoline to boaters is an exceptional use—falling under the "motorized vehicle sales, service, & repair" exception—that requires the approval of the BZA before it can occur in a commercial zone such as Senter's property.

[17] To address this issue, we must interpret the Zoning Ordinance. We interpret ordinances using the same methodology to interpret statutes. *Noblesville Bd. of Zoning Appeals v. FMG Indianapolis*, LLC, 217 N.E.3d 510, 513-14 (Ind. 2023) (citing *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011)). The interpretation of both statutes and ordinances is a question of law. *Id*. (citing *City of Bloomington Bd. of Zoning Appeals v. UJ-Eighty Corp.*, 163 N.E.3d 264, 267 (Ind. 2021), *cert. denied*). We review such legal questions de novo, giving the lower tribunal no deference. *Id*. (citing *Ind. Off. of Util. Consumer Couns. v. Duke Energy*, 183 N.E.3d 266, 268 (Ind. 2022)).

[18]     In *Siwinski,* our Supreme Court summarized the method of interpreting statutes and ordinances as follows:

> The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question. If a statute is clear and unambiguous on its face, no room exists for judicial construction. However, if a statute contains ambiguity that allows for more than one interpretation, it opens itself up to judicial construction to effect the legislative intent.
>
> If possible, every word must be given effect and meaning, and no part should be held to be meaningless if it can be reconciled with the rest of the ordinance. We are not at liberty to construe a facially unambiguous statute. However, if ambiguity exists, it is then open to construction to effect the intent of the legislature. Where ambiguity exists, to help determine the framers' intent, we must consider the statute in its entirety, and we must construe the ambiguity to be consistent with the entirety of the enactment. It is of the utmost importance to consider the ambiguous section within the scope of the entire [ordinance], as that allows us to better understand the reasons and policies underlying the [ordinance].
>
> We should also remember a cardinal rule of statutory construction, which is to ascertain the intent of the drafter. We can ascertain intent by giving effect to the ordinary and plain meaning of the language used.

949 N.E.2d at 828-29 (citations and internal quotations omitted). The Zoning Ordinance itself similarly states that "[t]he uses that are listed for various districts shall be according to the common meaning of the term or according to

the definitions as may be enumerated in this Ordinance." Appellant's App. Vol. III p. 58.

[19] Importantly, when interpreting a zoning ordinance, we must construe the ordinance to favor the free use of land, and we will not extend restrictions by implication. *Flying J., Inc. v. City of New Haven, Bd. of Zoning Appeals*, 855 N.E.2d 1035, 1039 (Ind. Ct. App. 2006) (citing *Saurer v. Bd. of Zoning Appeals,* 629 N.E.2d 893, 898 (Ind. Ct. App. 1994)), *trans. denied*.

[20] The first question before us is whether the term "retail business" as used in the Zoning Ordinance includes the sale of gasoline to boaters. The Zoning Ordinance does not define "retail business." Merriam-Webster's Online Dictionary defines "retail" as "to sell in small quantities directly to the ultimate consumer[,]" and "the sale of commodities or goods in small quantities to ultimate consumers[.]" *Retail*, MERRIAM-WEBSTER.COM DICTIONARY (available at: https://www.merriam-webster.com/dictionary/retail [https://perma.cc/FD8N-QEGK]). Similarly, the American Heritage Dictionary defines "retail" as "[t]he sale of goods or commodities in small quantities directly to consumers." *Retail*, AMERICAN HERITAGE DICTIONARY (available at: https://ahdictionary.com/word/search.html?q=retail [https://perma.cc/R6W8-92HA]). And Black's Law Dictionary defines "retail" as "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." *Retail*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[21]   Based on these dictionary definitions, we conclude that the sale of gasoline to boaters is clearly retail in nature. Accordingly, selling gasoline to boaters at the marina would be a "retail business," as that term is used in the Zoning Ordinance. And Senter did not generally need BZA permission to operate a "retail business" on his Property because the Property is zoned as a commercial district. Our conclusion is bolstered by Indiana statutes and regulations that refer to the sale of gasoline to customers as being "retail" in nature. *See* Ind. Code § 6-2.5-3.5-19 (referring to the sale of gasoline from a metered pump by a customer as being a "retail" purchase); 45 Ind. Admin. Code § 2.2-7-2 (referring to the vendor of gasoline sales dispensed from a metered pump as a "retail merchant").

[22]   Next, we must consider whether the sale of gasoline falls within the ordinance's exceptional use for "motorized vehicle sales, service, & repair." The BZA claims, and the trial court held, that the sale of gasoline to customers falls within the category of "motorized vehicle sales, service, & repair"—which is listed as an exceptional use of commercially-zoned property, and such exceptional uses require the approval of the BZA. *See* 83 AM. JUR. 2D *Zoning & Planning* § 129. As noted, the Zoning Ordinance defines a "motorized vehicle" to include "watercraft." Zoning Ordinance § 9; Appellant's App. Vol. III p. 131.

[23]   The Zoning Ordinance does not define the terms "motorized vehicle sales, service, & repair." Clearly, the sale of gasoline does not constitute the "sale" or "repair" of a motorized vehicle. We conclude that the sale of gasoline also does

not constitute a "motorized vehicle . . . service[.]" "Service" is defined by Merriam-Webster as "to perform services for: such as . . . to repair or provide maintenance for." *Service*, MERRIAM-WEBSTER.COM DICTIONARY (available at: https://www.merriamwebster.com/dictionary/service [https://perma.cc/5X2Q-95CC]). The American Heritage Dictionary defines "service" as "[t]o make fit for use; adjust, repair, or maintain: *service a car*." *Service*, AMERICAN HERITAGE DICTIONARY (available at: https://ahdictionary.com/word/search.html?q=service [https://perma.cc/M7ZR-TQSQ]). By referring to "motorized vehicle sales, service, & repair," the zoning ordinance clearly refers to businesses such as car dealerships, automotive repair shops, oil-changing garages, and similar establishments—and not to the sale of gasoline. Thus, the sale of gasoline to customers does not fall within the ordinary meaning of "motorized vehicle . . . service[.]"[6]

[24] We also must construe zoning ordinances in a manner that favors the free use of land. To shoehorn the sale of gasoline into the meaning of motorized vehicle "services," would do the opposite—construing the Zoning Ordinance in a manner that does not favor the free use of land. If the BZA wished to exclude

---

[6] It is true that retail establishments selling fuel to motorists are often referred to as "service stations." *See Flying J.*, 855 N.E.2d at 1039. But we do not take this to mean that the sale of gasoline to customers is a "service," within the meaning of the Ordinance. For this reason, the conclusion of the court in *City of Hammond, Ind. v. Indiana's Last Real Estate Dev. Corp.*, 923 F. Supp. 1097 (N.D. Ind. 1996), is distinguishable. In that case, the court concluded that the term "motor vehicle service station" included the sale of gasoline to automobiles. *Id*. at 1100. Here, the Zoning Ordinance does not use the term "service station," but merely "motorized vehicle sales, service, & repair." Appellant's App. Vol. III p. 54.

gasoline sales from the definition of a "retail business" or include gasoline sales within the meaning of the service of motorized vehicles, it could have done so explicitly, but it did not.

[25] The Supreme Judicial Court of Maine reached a similar conclusion in *C.N. Brown Co. v. Town of Kennebunk*, 644 A.2d 1050 (Me. 1994). In that case, C.N. Brown Co. ("Brown") purchased property zoned as a "Compact Lower Village Business District[.]" *Id.* A gasoline filling station and an automobile service station were located on the property. The automobile service station was a non-conforming use but was permitted pursuant to a "grandfather clause," in the zoning ordinance. *Id.* at 1051. Brown sought permission to convert the service station into a convenience store, while continuing to sell gasoline. The zoning board rejected Brown's contention that the gasoline filling station fit within the zoning ordinance's definition of a "retail store"—a permitted use—and instead concluded that the gasoline filling station fell within the definition of "motor vehicle sales and service"—a non-permitted use. *Id.* Brown sought judicial review, the trial court ruled in his favor, and the Town appealed. *Id.*

[26] In affirming the trial court, the Supreme Judicial Court noted that the zoning ordinance defined "retail store" as "[a]n establishment that sells goods or commodities directly to the consumer or other end user" and provided that the term "shall include salesrooms or showrooms, but not motor vehicle sales, either new or used, or eating places." *Id.* (citation omitted). Thus, the Court concluded "[c]learly a gasoline filling station sells a commodity directly to the end user." *Id.* The Court noted that, if the Town wished to exclude gasoline

filling stations from the definitions of a retail store, it could have done so, as it did with motor vehicle sales and eating places.[7] *Id*. But because no such exclusion was included in the zoning ordinance, the Court affirmed the trial court's decision and reversed the zoning board's ruling. *Id*.

[27] The same is true here. If the Zoning Ordinance intended to exclude gasoline sales from the definition of a "retail business," it could have done so explicitly. We will not do so implicitly by shoehorning the sale of gasoline to boaters within the meaning of "motorized vehicle service."

[28] Cases from other jurisdictions in which the sale of gasoline was explicitly excluded from the definition of the terms "retail store," "retail establishment," or "retail sales," are, thus, readily distinguishable from the present case, where the Zoning Ordinance contains no such explicit exclusion. *Cf. Warren's Station, Inc. v. City of Bronson*, 615 N.W.2d 769, 772 (Mich. Ct. App. 2000) (holding that, although zoning ordinance permitted "retail sales," sale of gasoline was not included because the ordinance required a special-use permit for "gasoline service stations."); *Atl. Ref. & Mktg. Co. v. Whitpain Twp. Zoning Hearing Bd.*, 656 A.2d 598, 603 (Pa. Commw. Ct. 1995) (holding that property owner required the permission of zoning board to operate a convenience store and gasoline filling station under zoning ordinance that generally permitted "retail

---

[7] The only reference to a gasoline filling station in the zoning ordinance at issue in *C.N. Brown* was in a section that provided that no loading platforms or receiving doors were permissible on the street side of a retail store, "*except for gasoline filling stations*." *Id*. (emphasis added). This clarified that a gasoline filling station was included in the permitted uses of the property as zoned. *Id*.

establishments," but which specifically required a special use exception to operate a "gasoline filling station.").

[29] In summary, the BZA clearly erred by prohibiting Senter from conducting retail gasoline sales on the Property. The sale of gasoline to boaters is a "retail business," which is a permitted use, and it does not fall within the exceptional use requiring BZA approval.[8]

## Conclusion

[30] The BZA clearly erred by prohibiting Senter from conducting retail gasoline sales to boaters on the Property. The sale of gasoline to boaters is a retail business, and Senter did not require BZA approval to operate a retail business on the Property because such use is a permitted use of the Property. The sale of gasoline does not constitute a motorized vehicle service, which is an exceptional use that would require the prior approval of the BZA. We, therefore, reverse the trial court's denial of Senter's petition for judicial review and remand with instructions for the trial court to grant Senter's petition.

[31] Reversed and remanded.

May, J., and DeBoer, J., concur.

---

[8] Because we conclude that the sale of gasoline is a permitted use, and does not fall within the exception, we need not address Senter's secondary argument that the BZA's decision to deny Senter permission to sell gasoline as an exceptional use was an abuse of discretion.

ATTORNEYS FOR APPELLANT

William A. Ramsey
Caleb W. Peery
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Adam D. Turner
Turner Valentine, LLC
Warsaw, Indiana