IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Haverford | : | |
| | : | |
| v. | : | No. 812 C.D. 2023 |
| | : | Argued: June 4, 2024 |
| Upper Darby Zoning Hearing Board and | : | |
| Piazza Family Limited Partnership | : | |
| | : | |
| Appeal of: Piazza Family Limited | : | |
| Partnership | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL S. WOLF, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                                        FILED:  July 16, 2024


            Piazza Family Limited Partnership (Owner) appeals an order of the
Court of Common Pleas of Delaware County (trial court) reversing the decision of
the Upper Darby Township Zoning Hearing Board (Zoning Board).  The Zoning
Board granted a dimensional variance to Owner from a setback requirement in
Section 550-22.F(6)(c) of the Upper Darby Township Zoning Ordinance (Zoning
Ordinance)[1] applicable to its property located at 5001 Township Line Road
(Property).  The Zoning Board also repealed a condition that it had imposed on the
Property in 2014 in conjunction with the grant of a variance for another structure on
the Property.  Upon review, we reverse the trial court.

---

[1] By Ordinance of November 11, 2020, No. 3082, Upper Darby Township codified and
consolidated its body of legislation into the Code of Ordinances of the Township of Upper Darby.
Section 550-22.F(6)(c) of the Zoning Ordinance replaced former Section 503-F6(c) of the Zoning
Ordinance of 2010, which was in effect when Owner applied for the variance in question. ZONING
ORDINANCE, §550-22.F(6)(c).  For clarity, this opinion uses the current version of the relevant
zoning regulations.

**Background**

The Property is approximately 2.8 acres in size and zoned for commercial use. It sits at the intersection of Township Line Road, Treaty Road, and Warrior Road. In 2014, Westport Holding Corporation, a predecessor to Owner, applied to the Zoning Board for a dimensional variance in order to construct a CVS Pharmacy and a proposed 3,000-square-foot retail structure on the Property.[2] The Zoning Board granted the variances with the condition that "the 3,000[-]s[quare][-foot] retail space shall not be a food establishment." R.R. 55a.

The CVS Pharmacy has been operating at the Property since the completion of the development in 2014. The 3,000-square-foot pad site, however, remains vacant. On August 4, 2020, Owner applied for a variance from Section 550-22.F(6)(c) of the Zoning Ordinance,[3] to allow the refuse area at the Property to be located 27.8 feet from the residential property line and to permit the use of the 3,000-square-foot space as a Starbucks coffee shop, which, Owner argued, was not a "food

---

[2] The variances included relief from requirements for setbacks, sidewalk width, buffer planting strip width, loading area visibility, and traffic circulation. Reproduced Record at 54a-55a (R.R. __). In addition, as part of the 2014 development plan, Westport Holding Corporation applied to Haverford Township to have the portion of the Property that is in Haverford Township rezoned for commercial use. Haverford Township granted the application and rezoned the portion of the Property to be in the C-3 Commercial District. *See* Hearing Transcript, 12/18/2014, at 8; R.R. 21a.

[3] It provides, in pertinent part, as follows:

> (6) Refuse areas. All commercial uses shall provide for storage of refuse either inside the building(s) or within an outdoor area enclosed by walls or opaque fencing at least six feet and not more than 12 feet high. Refuse shall be kept within one or more lidded container(s) not to exceed six feet in height. All refuse areas shall meet the following requirements:
>
> . . . .
>
>> (c) The refuse area shall be located at least 10 feet from any adjacent nonresidential property line *and 50 feet from any residential property line or street right-of-way line.*

ZONING ORDINANCE, §550-22.F(6)(c) (emphasis added).

2

establishment" as contemplated in the Zoning Board's 2014 order. In the alternative, Owner sought removal of the 2014 condition so that it could use the space as a Starbucks coffee shop. The entirety of the proposed coffee shop will be located in Upper Darby Township's C-2 Traditional General Commercial District (C-2 District).

On November 19, 2020, the Zoning Board held a hearing. Haverford Township, owner of Treaty Road, was granted intervention. Owner's counsel, Mark Damico, began the hearing with a background on the variance application. The 3,000-square-foot site, improved with parking, paving, and storm water management, does not have a building. Owner's initial 2020 application proposed to place a 2,163-square-foot Starbucks coffee shop at the site. After residents of Upper Darby and Haverford Townships expressed concerns, Owner modified its plan by relocating the trash enclosure and decreasing the size of the coffee shop. The new location of the trash enclosure, however, is "still up against the back row of parking" and does not meet the 50-foot setback requirement in Section 550-22.F(6)(c) of the Zoning Ordinance. Notes of Testimony, 11/19/2020, at 10 (N.T. __); R.R. 79a.

In support of its application, Owner presented the expert testimony of John Alejnikov, a civil engineer, who prepared the zoning plan for the Property. Alejnikov testified that Owner proposes a "drive[-]through only" coffee shop with "mobile ordering available for pick up[.]" N.T. 15; R.R. 84a. The size of the coffee shop has been reduced to 1,105 square feet.[4] *Id.* There will be "counterclockwise circulation around the building," with "a full bypass lane around the drive[-]through" and "stacking for eight vehicles." *Id.*

---

[4] The Zoning Board found that the size of the proposed coffee shop was decreased to 1,015 square feet. Zoning Board Adjudication, 1/29/2021, at 5, Finding of Fact No. 14.

Alejnikov testified that the trash enclosure needed for the Starbucks coffee shop will be located 27.8 feet from the nearest residential property line, at the rear of the site, and 160 feet from the nearest residence. An existing fence on the residential property screens the Property, and Owner will install additional screening. Alejnikov testified that the trash enclosure structure must be located in the rear of the Property for the following reasons:

> [Counsel:] Did you consider moving the trash receptacle to the opposite row of the parking spots?
>
> [Alejnikov:] We did. We looked at that and there were a couple of things that came up in terms of moving that. The first is that when you move this, these are paved structures. So as you move a trash enclosure within a paved structure adjacent to an area with a stop bar, one of the concerns that immediately comes up is visibility, certainly, as to have an intersection here that is internal.
>
> You don't want to do anything that will block the site or visibility for people coming in, so we want to make sure that someone sitting here would be able to see cars that are incoming and be able to see all of the traffic movements that are happening here in this area.
>
> The other thing to consider in this point is the movement that a truck – a trash truck would have to make in order to access these facilities. The trash enclosure would have to be angled in such a way that the trash truck would have to make a large swing out in order to get to it, which is why where it's located, it's more of a convenient location for them to drive along the rear here for them to access the trash receptacles and for them to continue on their way.

N.T. 20-21; R.R. 89a-90a.

Alejnikov testified that given the safety needs of both drivers and pedestrians, he, as a design professional, was unable to "locate the trash receptacle so that [Owner] would not need a zoning variance[.]" N.T. 22; R.R. 91a. The trash

4

enclosure will be located as far away as possible from the residences in Haverford Township and its size will be the minimum necessary for the proposed coffee shop.

On cross-examination, when questioned on the unique hardship of the Property that would justify Owner's variance relief, Alejnikov testified:

> Well, as physically—the physical circumstances of this property, we talked about having a location that is safe for vehicular traffic. So as you look at this property here, you can see that there's [sic] some unique jogs in this property line that are here at the rear of the property and certainly where this development is located.
>
> . . . .
>
> I would say, in addition, you have front yard areas around the perimeter of this area here and then adjacent to it, there are residences in the rear and access so it does limit the area where you could place a trash receptacle.

N.T. 24-25; R.R. 93a-94a.

Owner also presented the expert testimony of Guido DiMartino, a traffic engineer, who prepared a traffic study in 2019 for a proposed 2,163-square-foot Starbucks coffee shop. DiMartino testified that the 2019 traffic study demonstrated adequate and safe traffic movement to and from the Property. A smaller 1,015-square-foot Starbucks will have even less impact on traffic. The drive-through circulation would occur in a counterclockwise flow. At least eight cars can be stacked at one time without spilling onto public roads. At peak time, a maximum of 8 to 10 cars can be expected in the drive-through lane. DiMartino testified that drivers often bypass long queues; the proposed bypass lane will allow this traffic to move around the building and leave the site. Traffic to the Starbucks site mostly is "pass-by" traffic, which is "traffic that is already on the road[.]" N.T. 39; R.R. 108a. Right turns from the Property onto Treaty Road are illegal, and signage is in place at the Property to prevent this movement. In preparing his traffic study, using standard practices, DiMartino studied traffic flow at peak hours.

5

Finally, Owner presented the testimony of Richard McIlvene, a store development manager for Starbucks Coffee Company. He testified that significant modifications were made to the proposed development in response to community input and concern. The proposed Starbucks will be a drive-through, with mobile ordering and pick up only; it will not provide any seating, either indoors or outdoors. The store will serve coffee, coffee products, pastries, sandwiches, salads, bagels, sandwiches, desserts, yogurts, and shakes. Food is prepared offsite, prepackaged, and heated in convection-type ovens. Food sales make up approximately 30% of Starbucks' revenue for a store of this nature, and coffee sales make up approximately 70% of sales. McIlvene testified that a Starbucks shop is usually open from 5:30 a.m. to 10:00 p.m., depending on customer demand. The smaller building size will significantly reduce customer trips to the site thereby minimizing the potential for vehicle stacking issues in the drive-through lane. Delivery of food and drinks to customers from the time of placement of an order is timed and tracked to maximize efficiency. The time to fulfill each order for a drive-through-only coffee shop is far less than that needed for a traditional fast-food restaurant with drive-through service. A drive-through-only coffee shop constitutes a less intensive use than a full-size Starbucks shop or a fast-food restaurant. McIlvene expects approximately 600 customer visits daily for this proposed Starbucks, which is about 30% to 35% less than a full-size Starbucks shop. Starbucks will add signage at the site to reduce vehicle stacking in the drive-through lane. McIlvene testified that the size of the trash enclosure structure is reasonable given the proposed use of the site as a drive-through-only coffee shop and the recycling requirements for Starbucks' LEED certification.[5]

---

[5] According to the United States Green Building Council,

Nearby residents voiced concerns about the potential for idling traffic; the stacking of cars onto Warrior and Treaty Roads; lighting; and illegal right turns onto Treaty Road. They believed these potential problems could adversely impact air quality and safety.

The Zoning Board granted Owner's application for a dimensional variance to allow the refuse area to be located 27.8 feet from the property line separating the Property from the adjacent residential property in Haverford Township. The Board found that "[g]iven the unique size and shape" of the Property, the proposed location of the trash enclosure structure "is the most appropriate" for the Property. Zoning Board Adjudication, 1/29/2021, at 11. The Zoning Board found that Owner had demonstrated unnecessary hardship under Section 550-54.J of the Zoning Ordinance[6] and Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC)[7] and that the variance represents the minimum variance necessary that will afford relief. The Zoning Board further found that the grant of the variance will not adversely affect the public interest because the trash enclosure will be maintained approximately 160 feet from the nearest residence and will be separated by a wall and screening on the Property, as well as fencing existing on the residential property.

---

LEED (Leadership in Energy and Environmental Design) is the world's most widely used green building rating system. LEED certification provides a framework for healthy, highly efficient, and cost-saving green buildings, which offer environmental, social and governance benefits. LEED certification is a globally recognized symbol of sustainability achievement, and it is backed by an entire industry of committed organizations and individuals paving the way for market transformation.

*See* https://www.usgbc.org/leed (last visited July 8, 2024).

[6] The Zoning Board referred to former Section 1200-J of the Zoning Ordinance of 2010, which is reenacted in Section 550-54.J of the Zoning Ordinance. ZONING ORDINANCE, §550-54.J.

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2.

7

The Zoning Board also granted Owner's request to remove the 2014 condition that prohibited the Property from being used as a food establishment. The Zoning Board held that the condition was illegal and unenforceable because it prohibited a use permitted by right in the C-2 District. Zoning Board Adjudication at 11 (citing *Township of Harrison v. Smith*, 636 A.2d 288, 290 (Pa. Cmwlth. 1993)). In the alternative, the Zoning Board reasoned that it had authority to remove the zoning condition "after new facts are presented" and to apply "a variance standard to the requested relief—a standard [Owner] meets." Zoning Board Adjudication at 12. The Zoning Board found that Owner had been unable to secure a tenant to lease the 3,000-square-foot site for more than 6 years because the Property was not allowed to be used as a food establishment; the potential tenant, Starbucks, cannot take possession of the Property without the requested relief. The Zoning Board concluded that Owner's proposed use of the site is reasonable, and a change in circumstances has rendered the condition inappropriate. Finally, the Zoning Board held that the repeal of the condition will not adversely affect the public interest. Zoning Board Adjudication, 1/29/2021, at 14, Conclusions of Law Nos. 7-9.

## Trial Court Decision

Haverford Township appealed to the trial court. Without receiving additional evidence, by order of June 22, 2023, the trial court reversed the Zoning Board's decision, holding that the Zoning Board abused its discretion in granting Owner's dimensional variance from Section 550-22.F(6)(c) of the Zoning Ordinance.

The trial court held that the Zoning Board erred in finding that without a variance, the applicant would suffer an unnecessary hardship under Section 910.2 of the MPC. Trial Court PA.R.A.P. 1925(a) Op. at 15. The trial court also stated,

8

without elaboration, that the Zoning Board's finding that the location of the trash enclosure would not adversely affect the public interest "is belied by the record." *Id.*

Further, the trial court held that the Zoning Board erred in removing the 2014 condition that prohibited the Property from being used as a food establishment. To remove the condition placed on the grant of a variance, the trial court stated that the landowner must establish grounds for a traditional variance or a change in circumstances that makes the condition inappropriate, and an absence of injury to the public interest. Trial Court PA.R.A.P. 1925(a) Op. at 15 (citing *Ford v. Zoning Hearing Board of Caernarvon Township*, 616 A.2d 1089, 1092 (Pa. Cmwlth. 1992)). The trial court held that Owner failed to satisfy either prong. That Owner was not able to find a tenant in the years that followed the placement of this condition on the Property did not establish a change in circumstances that rendered the condition inappropriate. Trial Court PA.R.A.P. 1925(a) Op. at 16.

Owner appealed to this Court.

## Appeal

On appeal,[8] Owner raises two issues for our review. First, Owner argues that the trial court erred in holding that the Zoning Board's findings of fact relevant to unnecessary hardship were not supported by substantial evidence. Second, Owner argues that the trial court erred in reversing the Zoning Board's removal of the condition prohibiting the use of the Property as a food establishment. The Zoning Board properly determined that the condition placed was unenforceable because it prohibited a use permitted by right under the Zoning Ordinance. In the alternative, Owner argues that the Zoning Board properly found a change in

---

[8] "Where the trial court receives no additional evidence on appeal from a zoning hearing board's decision, an appellate court's standard of review is to determine whether the board committed an abuse of discretion or an error of law." *Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009).

9

circumstances warranted the removal of this condition. We address these issues *seriatim*.

## I. Dimensional Variance

In its first issue, Owner argues that the trial court erred in holding that the Zoning Board's factual findings related to unnecessary hardship were not supported by substantial evidence. Owner responds that it presented uncontradicted expert witness testimony that the location of the trash enclosure structure was limited by the Property's unique physical characteristics, including the irregular shape of the lot, internal and external traffic patterns, the existing development and points of ingress and egress from the site, and the necessity for trash collection. This uncontradicted evidence established that the proposed location of the trash enclosure at the rear of the Property will have no adverse impact on the public interest because it will be 160 feet from the nearest residential dwelling and obscured from view by a fence and other landscaping. In reversing the Zoning Board, the trial court ignored all this evidence. In sum, the trial court failed to defer to the Zoning Board's factual findings and exercise of its authority, as it was required to do. Owner Brief at 24 (citing *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1 (Pa. Cmwlth. 2015), and *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819 (Pa. Cmwlth. 2003)).

The Zoning Board, intervenor in this matter, echoes Owner's arguments. It further contends that the trial court erred when it *sua sponte* ruled on the proposed trash enclosure's impact on the neighborhood. Haverford Township did not raise this issue before the trial court; it challenged only the Zoning Board's finding of unnecessary hardship on the Property. In any event, the Zoning Board relied upon substantial evidence in finding that the location of the trash enclosure,

approximately 160 feet from the nearest residential dwelling, coupled with buffering, will not have an adverse effect on the public.

In response, Haverford Township argues that the trial court did not err. It argues that the hardship alleged by Owner was "self-created" rather than "unique or peculiar to the [P]roperty." Haverford Township Brief at 16-17. Owner chose to propose a food establishment at the 3,000-square-foot site even though it had agreed not to do so when the Zoning Board issued its 2014 decision.

Because the trial court did not take any additional evidence, our appellate review determines whether the Zoning Board abused its discretion or committed legal error. *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion occurs when the Zoning Board's factual findings are not supported by substantial evidence in the record. *Id.* (quoting *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994)). However, it was the responsibility of the Zoning Board to weigh the evidence before it and act as "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id.* We must "view the evidence in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence." *Id.*

Section 550-54.J(2) of the Zoning Ordinance adopts the requirements set forth in Section 910.2 of the MPC and states as follows:

> The Zoning Board may grant a variance, provided the following findings are made where relevant in a given case:
>
> > (a) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship required by law is due to such conditions and not the circumstances or conditions generally

11

created by the provisions of this chapter in the neighborhood or district in which the property is located.

(b) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(c) That such unnecessary hardship has not been created by the appellant.

(d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(e) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue.

ZONING ORDINANCE, §550-54.J(2). Courts have explained that the applicant for a variance must show: (1) unique circumstances or conditions of a property that would result in an unnecessary hardship; (2) no adverse effect on the public welfare; and (3) the requested variance would afford relief with the least modification possible. *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494, 500 (Pa. Cmwlth. 2016).

The issue here involves a dimensional variance, not a use variance, for which our Supreme Court has articulated a more relaxed standard, stating: "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Hertzberg v. Zoning Board of*

12

*Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). "Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Id.*

*Hertzberg* articulated several factors that courts may consider when addressing unnecessary hardship, "including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50. Unnecessary hardship can be shown by "demonstrating either that physical characteristics of the property are such that the property cannot be used for the permitted purpose or can only be conformed to such purpose at a prohibitive expense, or that the property has either no value or only a distress value for any permitted purpose." *Bernotas v. Zoning Hearing Board of City of Bethlehem*, 68 A.3d 1042, 1049 (Pa. Cmwlth. 2013). This Court has identified other factors that relate to unnecessary hardship.

In *Tidd*, 118 A.3d at 8, this Court affirmed the zoning board's grant of dimensional variances for the placement of horse corrals and pastures because existing trees and the presence of an extensive utility easement limited the property's usable land by about 25%. This constituted an unnecessary hardship. Likewise, in *Mitchell*, 838 A.2d 819, we affirmed the grant of dimensional variances to allow a school district to renovate an abandoned building into an elementary school. Because the existing building occupied almost the entire lot, there was no space for off-street parking, as required by the zoning ordinance. The only way to provide off-street parking would be to demolish the building at a high cost. This constituted unnecessary hardship.

13

By contrast, in *Dunn*, 143 A.3d 494, the landowner sought to demolish an existing single-family residence and replace it with three single-family residences on three new lots. The zoning board granted the landowner variances from the zoning regulations on minimum lot width and density of dwelling units. This Court reversed, holding that the alleged hardship was "self-inflicted" because the landowner could make reasonable use of the property with the existing single-family residence on the property. *Id.* at 505. Likewise, in *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500 (Pa. Cmwlth. 2018), this Court reversed the zoning board's grant of a variance to allow construction of a second floor on top of a garage in excess of the height restrictions. The owner claimed this was the only option because of the property's in-ground pool. This Court held that the owner's desire for more living space or to "employ his property exactly as he wishes" did not constitute unnecessary hardship. *Id.* at 507 (quoting *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)) (emphasis in original omitted).

Here, Owner was unable to pursue a reasonable use of the 3,000-square-foot pad site, which has been improved with paving, parking, and storm water management as part of the 2014 development plan. The site has remained vacant due to the 2014 condition prohibiting its use as a food establishment, which is a use permitted as of right in the C-2 District, either in the form of a "drive-through" or a "full-service sit[-]down." *See* ZONING ORDINANCE, §550-8, Table 3-1. Owner seeks relief to make any use of a vacant site for which Owner has failed to secure a tenant for more than six years.

Owner's evidence established that its potential tenant, Starbucks, cannot operate a coffee shop at the site without allowing placement of the refuse container within 27.8 feet from the residential property line. The variance was

14

necessary because of the irregular shape of the lot, internal and external traffic patterns, the existing development and points of ingress and egress from the site, and position necessary to permit trash collection. Placing the trash receptacle on the opposite side of the Property was not an option because it would "block the site or visibility for people coming in" and affect access to the trash receptacle. N.T. 20; R.R. 89a. Simply, there was no other place on the Property for the trash enclosure. Even after reducing the size of the coffee shop from 2,163 square feet to 1,015 square feet, Alejnikov testified that he could not locate the trash enclosure in compliance with the Zoning Ordinance. The Zoning Board credited Alejnikov's testimony. Accordingly, the Zoning Board concluded that given "the unique size and shape" of the Property, the denial of a variance would impose an unnecessary hardship. Zoning Board Adjudication, 1/29/2021, at 11.

The Zoning Board also found that the variance represents the minimum variance necessary that will afford relief. Before the trial court, Haverford Township challenged this finding but did not advance any argument in support thereof. Original Record, Item No. 18. The trial court did not rule on this issue. Accordingly, it is not before the Court in this appeal.

Because the trash enclosure will be placed approximately 160 feet from the nearest residence and be screened, there will be no adverse impact on the public interest. Haverford Township did not challenge this finding before the trial court. *Sua sponte*, the trial court opined that the Zoning Board's finding "is belied by the record," without identifying what evidence in the record led to this conclusion. Trial Court PA.R.A.P. 1925(a) Op. at 15. However, the trial court may not substitute its interpretation of the evidence for that of the Zoning Board. *Tidd*, 118 A.3d at 13. It is the Zoning Board's function to weigh the evidence before it, and it is "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id*.

15

In sum, the Zoning Board properly found that given the unique circumstances or conditions of the Property, a denial of a variance would result in an unnecessary hardship; the requested variance will not adversely affect the public welfare; and the variance represents the minimum variance necessary to afford relief. *Dunn*, 143 A.3d at 500. We hold that the trial court erred in reversing the Zoning Board's grant of the dimensional variance that allowed the refuse area at the Property to be located at 27.8 feet from the residential property line.

## II. Repeal of Zoning Condition

Owner argues, next, that the trial court erred in reversing the Zoning Board's repeal of the 2014 condition prohibiting the Property from being used as a food establishment. In doing so, the trial court did not address the Zoning Board's conclusion that the 2014 zoning condition prohibited a permitted use on the Property and, thus, was unenforceable. In *Township of Harrison*, 636 A.2d 288, this Court held that a zoning board, in granting a variance, has no power to impose a condition that deprives a property owner of an otherwise permitted use under the zoning ordinance.

In the alternative, Owner argues that the trial court erred by disregarding the Zoning Board's finding that a change in circumstances has occurred, thereby rendering the application of the zoning condition inappropriate. At the time of the prior owner's variance applications in 2014, Upper Darby Township Councilman Donald Bonnett spoke in favor of imposing the condition under the belief that "a food establishment of any type" at the 3,000-square-foot site would have "a huge impact on traffic and parking requirements." Hearing Transcript, 12/18/2014, at 40; R.R. 48a. In support of its present application, Owner argued that it established "a change in circumstances" that justified the removal of the zoning condition by presenting evidence that the reduction of the building size,

16

with the modification of the proposed use for a drive-through-only coffee shop with no indoor or outdoor seating area, would reduce the risk of potential traffic and parking issues. Owner Brief at 32-33. The Zoning Board also found that Owner had been unable to procure a tenant for the 3,000-square-foot pad site since 2014, necessitating a change in the contemplated use of the site.

Haverford Township responds that *Township of Harrison* is distinguishable. Owner's predecessor agreed to the 2014 condition. To suggest that the condition was "imposed" by the Zoning Board mischaracterizes the facts. Haverford Township at 20. Conditions placed by a zoning board are presumed to protect the public interest. Here, the 2014 zoning condition was part of "an express agreement" among the involved parties including Haverford Township and "at the behest of the surrounding community." *Id*. The transcript of the 2014 hearing reflected that the request to place the use condition was made by Owner's predecessor.

Haverford Township further contends that the Zoning Board's finding of a change in circumstances making the 2014 zoning condition inappropriate was not supported by substantial evidence. In fact, the Zoning Board cited no evidence to support this finding. The reduction of the building size or the modified use for a drive-through-only coffee shop, which Owner argues constitutes a change of circumstances, was not relied upon by the Zoning Board in reaching its conclusion. Likewise, the record does not support the Zoning Board's finding that Owner had been unsuccessful in finding a tenant for the 3,000-square-foot pad site thereby necessitating a change in the contemplated use of the Property.

Section 910.2(b) of the MPC states, "[i]n granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance." 53 P.S.

§10910.2(b). In *Township of Harrison*, 636 A.2d 288, a property owner sought front and side yard setback variances to build a structure to house an automobile sales, service and repair shop on his property, which was a permitted use allowed in the zoning ordinance. The zoning board granted the variances with the condition that no vehicle repair, body work, or painting could be conducted on the property. The owner did not appeal and used the property for a used car business. Two years later, the owner filed a second variance application to remove the condition so that he could do automobile and mechanical repair. The second variance application reduced the size of the building and increased the setbacks, allowing a greater buffer area. The zoning board denied the second variance, but the trial court reversed for the stated reason that the zoning board improperly prohibited a permitted use.

In affirming the trial court, this Court reasoned that "[t]he regulation in the ordinance at issue here concerns setbacks and not uses; thus, the [zoning board] can impose conditions that allow the least modification of the setback requirements, but cannot impose conditions irrelevant to those regulations." *Township of Harrison*, 636 A.2d at 290.

This Court also rejected the township's argument that the owner must show a change in circumstances in order to modify a condition imposed on a variance. In *Appeal of U.S. Aluminum Corporation of Pennsylvania*, 553 A.2d 1046 (Pa. Cmwlth. 1989), the condition placed upon United States Aluminum Corporation regulated the hours of operation of a shredder and did not prohibit a permitted use. We reasoned:

> The major distinction between *U.S. Aluminum* and the case at issue here is that here *the* [*zoning board*] *prohibited a use that is permitted in the zoning district*; it did not just place a condition on a use. If [the owner] was only seeking relief from a condition limiting a permitted use, he would have needed to show a change in circumstances . . . . We hold that the relief [the owner] seeks

18

> concerns a use that he is entitled to under the ordinance and, as such, he does not need to show changed circumstances in order to obtain relief from the [zoning board's] unauthorized action.

*Township of Harrison*, 636 A.2d at 291 (emphasis added and internal citation omitted).

Here, the 2014 condition improperly restricted a use permitted by right under the Zoning Ordinance and, thus, is unenforceable. Owner did not need to establish a change in circumstances because it seeks to use the Property as it is entitled to do under the Zoning Ordinance. That Owner's predecessor agreed to the condition is of no moment. As a general rule, an agreement which violates the law is illegal and unenforceable. *See, e.g.*, *Watrel v. Department of Education*, 488 A.2d 378 (Pa. Cmwlth. 1985) (settlement agreement between former college president and Department of Education in which the latter agreed to accept contributions to permit former president to become vested in State Employees' Retirement System was illegal and not enforceable).

We conclude that the Zoning Board properly removed the zoning condition it imposed upon the Property in 2014 that prohibited the permitted use of the 3,000-square-foot site as a food establishment. The trial court erred in reversing the Zoning Board.

## Conclusion

For the foregoing reasons, we conclude that the Zoning Board properly granted Owner the dimensional variance to allow the refuse area at the Property to be located at 27.8 feet from the residential property line. The Zoning Board's finding of unnecessary hardship was supported by substantial evidence. We further conclude that the Zoning Board properly repealed the zoning condition it imposed upon the Property in 2014 that prohibited the permitted use of the 3,000-square-foot

site as a food establishment because this condition was illegal and unenforceable. We therefore reverse the trial court's June 22, 2023, order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon did not participate in the decision in this case.

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Haverford | : | |
| | : | |
| v. | : | No. 812 C.D. 2023 |
| | : | |
| Upper Darby Zoning Hearing Board and Piazza Family Limited Partnership | : : | |
| | : | |
| Appeal of:  Piazza Family Limited Partnership | : : | |

## **O R D E R**

AND NOW, this 16th day of July, 2024, the order of the Court of Common Pleas of Delaware County, dated June 22, 2023, in the above-captioned matter, is REVERSED.

_____

MARY HANNAH LEAVITT, President Judge Emerita